JACKSON STEAM LAUNDRY *v.* ÆTNA CASUALTY & SURETY Co.

(Division B. March 3, 1930.)

[126 So. 478. No. 28108.]

J. W. Cassedy, Jr., of Brookhaven, and E. G. Williams, of McComb, for appellant.

Watkins, Watkins & Eager, of Jackson, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

The Jackson Steam Laundry brought suit against the Ætna Casualty & Surety Company for one thousand dollars upon a certain burglary insurance policy, at the February, 1929, term of the circuit court. There was a trial, resulting in a judgment in favor of the Ætna Casualty & Surety Company, the trial judge giving a peremptory instruction. The alleged burglary occurred on the 9th day of October, 1927; the inner drawer of a safe having been rifled of cash and checks belonging to the Jackson Steam Laundry amounting to two thousand, two hundred thirty-seven dollars and ten cents.

It appears from the testimony of the plaintiff that the president and general manager of the company, on the night of October 8, 1927, closed the safe, he stating that he was sure the combination was turned on and the safe locked. The following morning, Sunday, there was an effort to telephone the president to call his attention to the fact that some laundry had not been delivered to a customer at one of the hotels, but at the time the president was not at his home, and his wife, who answered the telephone, did not know where to find him, and called the assistant manager, who also had knowledge of the combination of the safe. Said assistant manager went to the office of the laundry somewhere near eleven o'clock in the morning, and, it being necessary to get in the safe to get the records so as to find the customer's laundry, he opened the safe and found that the inner drawer, which had been locked with a key, had been broken, and the money and checks taken out, and the drawer left on the floor somewhere in the laundry office. He testified there was some difficulty in opening the safe, as it did not open on the first effort, but both he and the general manager testified there were no visible marks upon the exterior of the safe, and no outward evidence of force or violence, or of tools, explosives, gas, or other chemicals having been

used; the safe having evidently been opened by manipulating the combination of the lock.

The insuring clause in the policy, which is the key to this lawsuit and which is presented for construction reads as follows: "For loss by burglary of the property designated in Condition R, within the respective amounts of coverage therein stated as applicable thereto from within that part of any safe or vault to which the insurance hereunder applies as stated in Condition B, occasioned by the felonious abstraction of such property from within such safe or vault while closed and locked by at least one combination or time lock, and located in the Assured's premises as defined herein or elsewhere, after removal therefrom by burglars, after entry into such safe or vault has been effected by force and violence by the use of tools, explosives, gas or other chemicals directly upon the exterior thereof, of which force and violence there shall be visible marks."

It appears that this whole controversy turns upon whether there must be evidence of force or violence by the use of tools, explosives, gas or other chemicals, *directly upon the exterior thereof, of which force and violence there shall be visible marks.*" Webster's Unabridged Dictionary defines "exterior" as the "outward surface; . . . outside," and defines "external" as pertaining to the "outside, outward."

There is no evidence in the record of any force or violence by the use of tools, explosives, gas, or other chemicals being applied directly upon the exterior of the safe, nor was there any evidence showing visible marks of violence on the exterior. The rule is well settled in law that, when the terms of a policy are ambiguous, the court will adopt that construction most favorable to the party who did not prepare or draw the contract of insurance. It is equally well settled, however, that, where the terms of a policy are unambiguous, the court will give effect to them where not prohibited by law, and that the court

will not undertake to rewrite or change a policy the parties themselves have made, so as to protect one of the parties to the contract from his own improvidence or imprudence or neglect. Brown v. Powell, 130 Miss. 496, 94 So. 457; Continental Casualty Co. v. Hall, 118 Miss. 871, 80 So. 335; American Life & Accident Co. v. Nirdlinger, 113 Miss. 74, 73 So. 875, 4 A. L. R. 871.

The identical terms used in the policy in the case at bar have not, so far as we are advised, been directly construed by this court, but have been construed in other states. One of the decisions similar to the present case is Blank v. National Surety Co., 181 Iowa, 648, 165 N. W. 46, L. R. A. 1918B, 562. In that case, it appeared that a policy provided indemnity only against loss resulting from entry into safes effected by the use of tools or explosives directly thereupon. Entry into the safe in question was effected by working the combination or lock on the outer door, and was without the use of tools or explosives or violence of any kind. The record does not show that the phrase in the policy in the present case, "of which there shall be visible marks," was contained in that policy, nor that the word "exterior" as used in the present policy was in that policy. The court, in rendering its opinion, used the following language in that case: "There is no apparent ambiguity in the language of the policy. The language of the clause above quoted excludes the idea suggested by counsel. The indemnity provided is against loss resulting from an entry made into the safe by the use of tools or explosives directly thereupon. This necessarily means the door or outer part thereof. The risk assumed by the insurer contemplates that the door of the safe shall be securely locked, and entrance therein can be made only by the use of tools or explosives for that purpose. This secures the insurer against loss resulting from carelessness in leaving the safe door unlocked by persons having access thereto. The policy is not a general policy providing indemnity against

all losses resulting from burglary, but only such loss as results from means employed according to the terms of the policy. The language of the policy certainly does not contemplate indemnity in a case where access is gained to the inner chamber of the safe without the use of tools or explosives, nor against loss resulting from breaking or destroying a wooden drawer which would offer but indifferent resistance to the simplest tools after the outer door has been opened by working the combination to the lock thereon." Blank v. National Surety Co., supra. The court there held that the policy did not insure against burglary under the circumstances stated. The same general conclusion and results were adopted in the cases of Maryland Casualty Co. v. Ballard County Bank, 134 Ky. 354, 120 S. W. 301; Brill v. Metropolitan Surety Co. (Sup.), 113 N. Y. S. 476; First National Bank v. Maryland Casualty Co., 162 Cal. 61, 121 P. 321, Ann. Cas. 1913C, 1170; Fidelity & Casualty Co. v. Sanders, 32 Ind. App. 448, 70 N. E. 167.

The appellant here relies upon the cases of National Surety Co. v. Chalkley (Tex. Civ. App.), 260 S. W. 216, 217, and Columbia Casualty Co. v. Rogers, 29 Ga. App. 248, 114 S. E. 718. In the first mentioned, National Surety Co. v. Chalkley, the policy did not have in it the word "exterior" as used in the present policy, and the court there said that, if marks of violence appeared anywhere it was sufficient, and that "no mention is made of a burglar-proof safe, in that part of the policy which insures appellee, and there is nothing mentioned in connection with the force in entering the safe being made from the outside of the safe. The 'special provisions,' section 8, apply only to burglar-proof chests in burglar-proof safes, and the provision in section 9, as to the force being applied to the 'exterior' of the safe, has reference only to fireproof safes or vaults. The application for the insurance described the safe and showed that it was not burglar proof. Appellant knew exactly what kind of

safe was used by appellee and knew that it was not burglar proof. The evidence did not show how the outer door of the safe was opened, and the court could not have found that it was done with a key or by manipulation, even if such finding had been requested by appellant, which was not done."

We do not think this case is identical with the one before us, and we entertain some doubt as to its soundness upon the facts stated in the opinion. Of course, when decisions from foreign jurisdictions are cited, they are merely persuasive, having no control upon decisions here. The fact that another court has dealt with the question and reached a conclusion deliberately upon investigation is always persuasive, but it is not authority in any sense of binding courts of other jurisdictions.

The case of Columbia Casualty Co. v. Rogers, 29 Ga. App. 248, 114 S. E. 718, contains only the syllabi prepared by the court. The judgment was affirmed per curiam, and there is nothing in writing but the syllabi prepared by the court. The facts do not sufficiently appear for us to know whether it is exactly like the case at bar or not, but, if so, we will not follow it.

The other cases relied upon by the appellant are not sufficiently in point to have any weight with the court in its decision.

The judgment of the court below therefore will be affirmed.

Affirmed.